**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARY MCGRATH, on behalf of herself and all similarly situated persons, | ) ) ) **JURY TRIAL DEMANDED** |
| Plaintiff, | ) ) No. |
| v. | ) ) |
| ZOOMER, INC., | ) ) |
| Defendant. | ) ) |

**CLASS ACTION COMPLAINT**

Plaintiff, Mary McGrath, brings this action on behalf of herself and all others similarly situated, against Zoomer, Inc. ("Zoomer" or "Defendant"), to stop it from sending unsolicited text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"),[1] and to recover statutory damages and other relief for all persons who received such text messages. Plaintiff's allegations are based on information and belief and the investigation of counsel, except those pertaining to Plaintiff's own actions, which are based on personal knowledge.

**INTRODUCTION**

1. Zoomer harnesses technology to send unauthorized autodialed telemarketing calls to consumers nationwide. This case challenges Zoomer's practice of unlawfully sending autodialed calls, in the form of text messages, to cellular telephones without prior express written consent (and without obtaining any other consent or authorization), as required by the TCPA.

---

[1] The TCPA is codified at Section 227 of the Communications Act of 1934, as amended.
[2] "Calls" includes text messages. *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd.

1

2. Zoomer did not have Plaintiff's prior express written consent (or obtain any consent at all) to send autodialed text messages to her wireless phone.

3. The TCPA grants consumers a private right of action, with provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and the court may increase those damages up to three times when it determines a violation was knowing or willful. 47 U.S.C § 227(b)(3). On behalf of herself and all others similarly situated, Plaintiff seeks statutory damages for each violation of the TCPA by Zoomer, and requests that the Court treble those damages.

4. On behalf of herself and the Class, Plaintiff also seeks an injunction requiring Zoomer to cease all unlawful text messages.

**PARTIES, JURISDICTION, AND VENUE**

5. Zoomer is a corporation with its principle place of business in Pennsylvania, though it has product and engineering offices in San Francisco. Zoomer operates a food delivery service which stores telephone numbers and sends autodialed calls to consumers nationwide – including to a significant degree in Chicago – in order to market and advertise its service.

6. Plaintiff is a citizen of Illinois, and resides in Cook County, Illinois, in this judicial District.

7. This Court has jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's claims arise under the TCPA, a federal statute. The Court has personal jurisdiction over Zoomer because it conducts business within the State of Illinois and this District.

8. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant regularly does business in this District, and/or a substantial part of the events or omissions giving rise to Plaintiff's claims arose in this District.

**FACTUAL ALLEGATIONS**

9. This case challenges Zoomer's practice of sending autodialed calls, in the form of text messages,[2] to cellular telephones without prior express written consent,[3] prior express consent, or any other consent.

10. Short Message Service ("SMS"), more commonly known as "text messaging," is a popular means for communicating among cell phone users.

11. The most common form of text messaging is person-to-person messaging. Text messages may also be sent by automated systems to facilitate, for example, the ordering of products and services from cell phones or other marketing programs.

12. Businesses continually seek cost-effective ways to market their goods and services, or otherwise advertise. The popularity of cell phones and text messaging has created a marketing opportunity for businesses, but their telemarketing efforts are limited by restrictions on telephone, facsimile, and email solicitations.

13. Unlike conventional advertising, text message advertising requires the use of technology—cell phones—owned and paid for by the text message recipients.

14. According to the Federal Communications Commission ("FCC"), "Month after month, unwanted … texts, both telemarketing and informational, top the list of consumer complaints received by the Commission. The [TCPA] and [FCC] rules empower consumers to decide which … text messages they receive, with heightened protection to wireless

---

[2] "Calls" includes text messages. *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, par. 165 (2003) (the "2003 TCPA Order"). *See also* 47 U.S.C § 227 (b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii).

[3] *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 27 FCC Rcd. 1830, 1838, par. 20 (2012) (the "2012 TCPA Order"); 47 C.F.R. § 64.1200(a).

3

consumers….." *See* TCPA Omnibus Declaratory Ruling and Order, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd. 7961, para. 1 (2015) ("2015 Omnibus Order").

15. The FCC has explained, "Calling and texting consumers en masse has never been easier or less expensive" in part, because skyrocketing growth of mobile phones, rising from approximately 140 million wireless subscriber connections in 2002 to approximately 326 million in 2012. *See* 2015 Omnibus Order, par. 7. Additionally, 39 percent of adults were wireless-only in the second half of 2013, compared to fewer than three percent of adults at the beginning of 2003.[4]

16. "The intent of Congress, when it established the TCPA in 1991, was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed [text messages] calls generate." *See* 2015 Omnibus Order, par. 29 (citing See S.REP. NO. 102-178, 1st Sess., 102nd Cong., (1991) at 2, 4–5). Congress found that banning such text messages, except when the texted party consents, "is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* Congress therefore put the responsibility for compliance with the law directly on the party that "makes" or "initiates" autodialed text messages. *Id.*

17. At issue here, Zoomer transmitted text messages to cell phone users, including Plaintiff and the other members of the Class, to market and advertise its business and its mobile device application.

18. Plaintiff's cellular phone number was, at all relevant times, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii), and associated with her cellular

---

[4] According to a 2012 study by the Pew Research Center, 69% of cell phone users who use text messaging receive unwanted text message spam, and "[o]f those texters, 25% face problems with spam/unwanted texts at least weekly." (Source: http://www.pewinternet.org/2012/08/02/mobile-phone-problems (last visited: November 29, 2016.))

telephone (smartphone) that she used exclusively, customarily, routinely and daily (*e.g.,* to call, text, and to store data or digital content) at relevant times including when she received the text message at issue. Plaintiff is thus the called party of this cellular phone number.

19. On or about September 28, 2016, Plaintiff called Cheesie's restaurant in Chicago, Illinois from her cellular phone to make a food order for delivery, for her lunch.

20. However, Cheesie's informed Plaintiff that she was outside of their delivery area and as a result no food order was completed and no food delivery was made.

21. Right after Plaintiff got off the phone with Cheesie's, she received a text message from Zoomer, which thanked her for ordering from Cheesie's and encouraged her to download Zoomer's application for mobile phones ("app").

22. The following image is a screen shot of the text message at issue, received by Plaintiff on her cellular phone on September 28, 2016:



5

23. The text message purportedly originated from telephone number 415-319-6232.

24. On information and belief, Zoomer provides food delivery services for Cheesie's restaurant.

25. While Plaintiff never completed a food order for delivery with Cheesie's and had no contact with Zoomer, on information and belief, the September 28, 2016 text message was sent by Zoomer, or on Zoomer's behalf and at Zoomer's direction, in order to market and advertise Zoomer and promote the downloading of its mobile application, for Zoomer.

26. Plaintiff did not expressly consent (or provide any other authorization or consent) to receive this commercial text message from Zoomer.

27. Plaintiff did not give Zoomer her prior express written consent to send SMS text messages to her wireless phone.

28. Plaintiff had no role or involvement in placing the Zoomer autodialed text message call that she received. Plaintiff had no reason to expect to receive a text message by or about Zoomer or in connection with a food delivery from Cheesie's; Plaintiff had no control in choosing to receive the text message; and Plaintiff had no say over the timing, manner or content of the text message. Rather, Zoomer's automated system stored telephone numbers, and determined which numbers to call or text, when Plaintiff would receive her aforementioned text message, and the message contents.

29. Zoomer never clearly and conspicuously disclosed to Plaintiff that she had consented to receive automated text calls from Zoomer – because she never so consented, and no such request for any consent was made. In fact, no such consent was requested or required of Plaintiff at any time by anyone or via any media, or to send the aforementioned text message (or any text message or call).

6

30. Plaintiff never accessed or used Zoomer's services and never downloaded Zoomer's app.

31. Plaintiff did not ask or want to receive the Zoomer text message, she did not provide Zoomer with her cell phone number, she did not ask anyone to contact her about the food order that she never completed, and Zoomer's text message needlessly occupied her time.

32. As a matter of routine, Zoomer sends such automated text calls as set forth above, with substantially the same commercial, impersonal content (with the restaurant name substituted automatically), *en masse*, to consumers after they call to order food from restaurants that Zoomer delivers for, and irrespective of whether food is ordered, or delivered, or not.

33. Zoomer's technology, including its own technology that it deploys at restaurants in its delivery network, is set up to automatically store personal information, such as one's mobile telephone number, and to automatically send its automated text calls when a food delivery order is being processed or placed.

34. Zoomer's technology also enables Zoomer to make further, additional or follow-up calls to the same consumers who receive the aforementioned text message, including but not limited to calls with the same or substantially the same preset content as set forth above, and other messages with pre-determined content.

35. But, neither Zoomer nor any other party obtains prior express written consent, any other consent or authorization, or provides clear and conspicuous disclosure to obtain consent, before sending Zoomer text calls.

36. Zoomer's business aims to use its technology to automate its business; to seamlessly store telephone numbers from consumers who call to place delivery orders from a restaurant in its network; and to use those cellular telephone numbers to market to consumers on

their cellular phones. Zoomer's aforementioned text messages and app are main vehicles that Zoomer uses to encourage consumers, on a mass scale, to use Zoomer's service and make more delivery orders.

37. Zoomer, by using text messages to get customers to use its app, is able to generate business and develop its customer base. Using such tactics, Zoomer can market to a high volume of customers in at least 18 cities where food deliveries are popular, and Zoomer can increase its business and delivery orders.

38. Zoomer's explanation for its app states: "Hungry? We'll show you Zoomer-powered restaurants nearby with estimated delivery times, so you can find something tasty that can be delivered fast!" Zoomer's app also enables customers to view and browse Zoomer-delivered restaurants and menus, and provides other content to market its service and provide means to make Zoomer delivery orders. In this way, Zoomer encourages consumers to download and use its app, make purchases using Zoomer delivery, and engage Zoomer, which makes money for Zoomer.

39. The aforementioned text messages sent to persons who make restaurant orders where Zoomer delivers thus serve as an attractive marketing campaign for Zoomer.

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this lawsuit as a class action on behalf of herself and all other similarly situated persons, including the following Class and Subclass.

41. The Class is initially defined as follows: "All persons in the United States who received a text message from Zoomer."

42. The Subclass is initially defined as follows: "All persons in the United States who received a text message from Zoomer in connection with a food delivery order that was not

8

completed."

43. Excluded from the Class and Subclass[5] are current and former officers of Defendant, its respective employees, officers, directors, agents, independent contractors, and representatives, Defendant's counsel, Plaintiff's counsel, and any member of the judiciary presiding over this action, and their immediate families.[6]

44. This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Rule 23(a). Plaintiff's claims are typical of other members of the Class, and Plaintiff's counsel are experienced in class action litigation. Additionally, prosecution of Plaintiff's claims separately from the Class's claims would create a risk of inconsistent or varying adjudications under Rule 23(b)(1)(A). Furthermore, questions of law or fact common to the Class predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23(b)(3).

45. **Numerosity:** On information and belief, the Class is so numerous that joinder of all Class members is impracticable. The precise number of Class members are unknown to Plaintiff, but can be obtained from Zoomer's records or the records of third parties.

46. **Ascertainability:** The Class is defined by objective criteria, permitting Class members to be identified. On information and belief, the individual members of the Class may be identified from Zoomer's records or the records of third parties.

---

[5] Unless otherwise noted, "Class" as used in this Complaint refers to the Class and the Subclass, respectively.

[6] Plaintiff reserves the right to modify the Class definitions and exclusions as appropriate, and to plead additional supporting causes of action.

47. **Commonality and Predominance:** Common questions of law or fact predominate over any questions affecting only individual members of the Class, and may be determined without reference to the individual circumstances of any Class member, including, for example, as follows:

    a. Whether Zoomer violated the TCPA by sending unauthorized text messages to Plaintiff and the other members of the Class;

    b. Whether the equipment Zoomer used to send the text messages in question was an automatic telephone dialing system defined by the TCPA;

    c. Whether Zoomer acquired Class members' cell phone numbers by way of a written agreement, bearing the signature of the person called;

    d. Whether the means by which Zoomer acquired Class members' cell phone numbers clearly and conspicuously informed them that they may receive advertisements or telemarketing messages by means of an automatic telephone dialing system;

    e. Whether the means by which Zoomer acquired Class members' cell phone numbers clearly and conspicuously informed them that they were not required to sign or enter into the agreement as a condition of purchasing any property, goods, or services;

    f. Whether Plaintiff and the other members of the Class are entitled to statutory damages under the TCPA;

    g. Whether Zoomer's actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiff and the other members of the Class; and

    h. Whether Plaintiff and members of the Class are entitled to equitable relief, including but not limited to injunctive relief.

## COUNT I

### VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
### 47 U.S.C. § 227, *ET SEQ.*

48. Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein, and brings this Count individually and on behalf of the Class.

49. The FCC's regulations provide, in pertinent part—

(a) No person or entity may:

(1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice;...(iii) To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

(2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a) (1) (i) through (iii) of this section, other than a call made with the prior express written consent of the called party.

47 C.F.R. § 64.1200.

50. Zoomer failed to obtain the consent required to send the aforementioned text messages using an automatic telephone dialing system.

51. Zoomer's text messages to Plaintiff and the other class members introduced an advertisement or constituted telemarketing.

52. The TCPA defines "telemarketing call," or "telephone solicitation," as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of ... goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

53. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or

sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

54. Before sending a text message, the sender must obtain "prior express consent" from the called party.

> The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200(f)(8).

55. Zoomer made telephone solicitations, including but not limited to the text messages recited above, to the cell phone numbers of Plaintiff and other members of the Class.

56. Zoomer sent unsolicited commercial text messages to Plaintiff and the other members of the Class using an automated telephone dialing system.

57. The text messages were sent to Plaintiff and the Class using automated telephone dialing system that has the capacity to store telephone numbers and dial such numbers, and that can send a text message to cellular telephone numbers stored as a list or database without human intervention. By using such equipment, Zoomer's system did store text messages, and caused text messages, including a voluminous number of cell phone numbers on a given day, to be sent *en masse* in automated fashion, without human intervention.

58. Zoomer's automated telephone dialing system has the capacity to maintain a database or list of telephone numbers and to dial numbers from such a database or list.

59. Zoomer's automated telephone dialing system has the capacity to dial phone numbers in a sequence.

60. Zoomer's automated telephone dialing system places calls pursuant to a programed sequence, whereby, on information and belief, a text message is sent to the stored phone number that mostly recently made, or attempted, a food order to be delivered and managed by Zoomer.

61. Zoomer processes thousands of delivery orders (completed or not) per day, and Zoomer's automated telephone dialing system thus makes up to substantially more than one thousand (if not thousands of) the autodialed telephone calls or text messages per day. And, according to Zoomer, its technology platform is built to handle an extraordinarily high volume of concurrent deliveries.

62. Zoomer sent these text calls without first obtaining the called parties' prior express written consent (or any other form of consent).

63. Zoomer knew, or should have known, it lacked prior express written consent (or any other consent) to send these text messages.

64. Zoomer violated the TCPA by sending text messages to Plaintiff and the other Class members without first obtaining their prior express written consent (or any other consent or authorization).

65. Zoomer also violated the TCPA by not providing the required clear and conspicuous disclosures to Plaintiff and the other Class members required by 47 C.F.R. § 64.1200(f)(8)(i)(A) and (B).

66. Zoomer harmed Plaintiff and other consumers by sending these text messages, because these text messages violated their private, substantive rights under the TCPA and

invaded their privacy and seclusion; because they were subjected to the aggravation, frustration and annoyance that accompanies such unsolicited wireless/cellular spam; because these text messages were a nuisance; because these text messages intruded upon and occupied the texting and operating capacity of their cell phones; because receipt of these messages used, occupied or depleted their cell phones, cell phone batteries, and cell phone plan data, and consumed part of the limited cell phone storage space available to operate and store data or digital content on their cell phones; because the text messages resulted in lost electricity needed to recharge their cell phones; and because they wasted, used and lost time addressing these text messages.[7] Consumers also pay or are obligated to pay to receive these text messages through the cell phone carrier.

67. As a result, due to Zoomer's above-described violations Plaintiff and the Class suffered damages and under 47 U.S.C. § 227(b)(3) are each entitled to, *inter alia*, a minimum of $500 in statutory damages for each violation of the TCPA, and up to $1,500 for each violation if the Court determines that Zoomer's violations of the TCPA were knowing or willful.

68. The Court should also enjoin Zoomer from sending future text messages without the written consent of the called party pursuant to 47 U.S.C. § 227(b)(3)(A).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays that the Court grant the following relief:

a. Find that this case may be maintained as a class action, appoint Plaintiff as Class representative, and appoint Plaintiff's counsel as counsel for the Class;

---

[7] This may be particularly true for consumers when a delivery order is not completed, but confusingly, a text message is sent thanking the consumer for the order and inviting the consumer to download an app.

b. Find and declare that the unlawful conduct alleged herein is illegal and violates the TCPA;

c. Award $500 in statutory damages for each violation of the TCPA, and treble the statutory damages if the Court concludes that Zoomer's violations were willful or knowing;

d. Enter an injunction prohibiting Zoomer from engaging in the same or similar practices alleged herein;

e. Enter judgment against Zoomer and in favor of Plaintiff and members of the Class;

f. Award reasonable attorneys' fees and costs to Plaintiff's counsel as allowed by applicable law and statute; and

g. Provide such other and further relief allowed by law or equity.

**JURY DEMAND**

Plaintiff demands a trial by jury of all causes of action and matters so triable.

    Respectfully submitted,

    Mary McGrath, on behalf of herself
    and all similarly situated persons

    By: /s Ilan Chorowsky, Esq.
        One of Plaintiff's Attorneys

| | |
|---|---|
| Phillip A. Bock | Ilan Chorowsky, Esq. |
| David M. Oppenheim | Mark A. Bulgarelli, Esq. |
| Tod A. Lewis | PROGRESSIVE LAW GROUP LLC |
| BOCK, HATCH, LEWIS & OPPENHEIM, LLC | 1570 Oak Avenue, Suite 103 |
| 134 N. LaSalle St., Suite 1000 | Evanston, IL 60201 |
| Chicago, IL 60602 | (312) 787-2717 (voice) |
| 312-658-5500 (voice) | |